950 F.2d 272
 William L. DUCKETT, Plaintiff-Appellee,
v.
The CITY OF CEDAR PARK, TEXAS, et al., Defendants,
Dianne Newsom, as Community Survivor of the Estate of Clyde
Newsom, Deceased and George Hamilton, etc.,
Defendants-Appellants.
 No. 91-8060.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 10, 1992.
 
 Douglas M. Becker and Roger Moore, Gray & Becker, Austin, Tex. for defendants-appellants.
 Gabriel Gutierrez, Jr., Austin, Tex., for William L. Duckett.
 Appeals from the United States District Court for the Western District of Texas.
 Before KING, JOHNSON, and EMILIO M. GARZA, Circuit Judges.
 EMILIO M. GARZA, Circuit Judge:
 
 
 1
 Defendants Newsom and Hamilton, police officers for the City of Cedar Park, Texas, appeal from a denial of their motion for summary judgment asserting qualified immunity. Concluding that--based on the summary judgment record--defendants are entitled to qualified immunity as a matter of law, we reverse the district court's denial of summary judgment and remand for entry of judgment in defendants' favor.
 
 I. BACKGROUND
 A. Facts
 
 2
 During the evening of June 2, 1987, Officer George Hamilton lawfully stopped William L. Duckett in the City of Cedar Park, Texas for failing to dim his headlights.[1] Hamilton, a police officer for the City, ran a routine warrant check on the computer which revealed the existence of an outstanding warrant in Williamson County.[2] Despite Duckett's protests that the warrant had been withdrawn, Hamilton transported Duckett to the police station.
 
 
 3
 At the police station, Duckett saw Officer Newsom and asked him about the warrant. Newsom told Duckett that he would check on the warrant the next morning.[3] Later that same evening, Hamilton telephoned Duckett's mother, who informed him that the warrant for Duckett's arrest had been withdrawn. To make sure the warrant was still valid, Hamilton sought and obtained a teletyped confirmation from Williamson County which showed an outstanding warrant for Duckett's arrest. Hamilton then showed this confirmation to Newsom and, accordingly, Duckett was held in custody overnight. Duckett was released from custody the next morning after a new teletype from Williamson County indicated that the warrant for his arrest had been withdrawn.
 
 B. Proceedings
 
 4
 Duckett sued the City of Cedar Park, Texas and other city officials[4] under 42 U.S.C. § 1983, alleging they violated his constitutional rights. Specifically, Duckett alleged that defendants' actions deprived him of liberty without due process of law.[5] Throughout the litigation, defendants filed various motions for summary judgment, alleging they were entitled to judgment as a matter of law. Defendants City of Cedar Park, Newsom and Hamilton filed their initial motion for summary judgment, asserting that summary judgment was proper because: (1) Duckett's evidence failed to establish a constitutional violation; and (2) the City of Cedar Park was immune from liability on Duckett's claim. Subsequently, defendants City of Cedar Park, Newsom and Hamilton filed a supplemental motion for summary judgment, asserting summary judgment was appropriate because: (1) Duckett failed to state a constitutional claim; and (2) even if Duckett had stated a constitutional claim, Duckett could not overcome defendants' assertion of good faith defense. The district court denied the defendants' initial motion for summary judgment and set the case for trial. The district court did not rule on the supplemental motion for summary judgment.
 
 
 5
 Defendants Hamilton and Newsom appealed the district court's order denying defendants' motion for summary judgment, pursuant to Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) ("a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law is an appealable 'final decision' "). This court, however, concluding that the order from which defendants appealed was not an appealable judgment, dismissed the appeal for want of jurisdiction. Duckett v. City of Cedar Park, Texas, Et Al, No. 90-8285, slip op. at 4 (5th Cir. Oct. 17, 1990) [917 F.2d 562 (table) ]. The court concluded that the district court did not expressly address whether Newsom and Hamilton were entitled to summary judgment based on qualified immunity. This court noted that dismissing the appeal would not prevent Newsom and Hamilton from filing a summary judgment motion based specifically on qualified immunity. Id.
 
 
 6
 Defendants Newsom and Hamilton filed their second supplemental motion for summary judgment where they expressly asserted they were entitled to summary judgment based on qualified immunity. The district court granted defendants' motion for summary judgment in part and denied it in part.[6] The district court denied defendants' motion for summary judgment on the issue whether Duckett was held in custody longer than necessary because it found a factual dispute as to the defendants' knowledge regarding the warrant's validity. Defendants Newsom and Hamilton now appeal, again pursuant to Mitchell v. Forsyth, the partial denial of their motion for summary judgment.
 
 II. STANDARD OF REVIEW
 
 7
 Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he substantive law will identify which facts are material." Id. at 248, 106 S.Ct. at 2510. Such a showing entitles the movant to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which reveal there are no genuine material fact issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant produces such evidence, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial--that is, the nonmovant must come forward with evidence establishing each of the challenged elements of its case upon which it will bear the burden of proof at trial. Id. at 323-24, 106 S.Ct. at 2553. Because this case is an appeal from summary judgment, we review the record de novo, Fields v. City of South Houston, 922 F.2d 1183, 1187 (5th Cir.1991), examining the evidence in the light most favorable to Duckett, the nonmovant below. See Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir.1990).
 
 III. DISCUSSION
 
 8
 Until recently, this court would review a Mitchell v. Forsyth appeal, where the defendant pleads the qualified immunity defense, by examining defendant's entitlement to this defense before examining the merits of the plaintiff's constitutional claim. See, e.g., Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir.1990) (on appeal from order denying motion for summary judgment based on qualified immunity, plaintiff has burden of submitting summary judgment evidence to create genuine issue as to whether defendant's conduct was objectively reasonable); Mouille v. City of Live Oak, 918 F.2d 548, 551 (5th Cir.1990) (court must determine whether defendant's conduct is qualifiedly immune before reaching merits of § 1983 claim). Because the methodology for reviewing a qualified immunity defense has changed, we first examine the extant case law to ascertain the proper analytical structure. See Siegert v. Gilley, --- U.S. ----, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); Samaad v. City of Dallas, 940 F.2d 925 (5th Cir.1991); Quives v. Campbell, 934 F.2d 668 (5th Cir.1991).
 
 A.
 
 9
 The Supreme Court--while keeping all the familiar pieces--recently reassembled the analytical structure for reviewing an appeal of a denial of a motion for summary judgment asserting qualified immunity. In Siegert v. Gilley, the Court's stated purpose was to "clarify the analytical structure under which a claim of qualified immunity should be addressed." 111 S.Ct. at 1793. The Court rejected the approach taken by the Court of Appeals,[7] which denied the defendant's motion for summary judgment asserting qualified immunity because plaintiff was unable to overcome defendant's assertion of qualified immunity, id. at 1792, by "assum[ing], without deciding, that ... a constitutional claim [had been] stated." Id. at 1794. The Supreme Court, while it affirmed the Court of Appeals, concluded that the plaintiff's claim "failed at an analytically earlier stage of the inquiry into qualified immunity: his allegations ... did not state a claim for violation of any rights secured to him under the United States Constitution." Id. at 1791. The Supreme Court held that the first inquiry in the examination of a defendant's claim of qualified immunity is whether the plaintiff "allege[d] the violation of a clearly established constitutional right." Id. at 1793.
 
 
 10
 "[I]nformed by Siegert v. Gilley," this court in Quives analyzed an appeal of a grant of summary judgment on defendants' claim of qualified immunity.[8] 934 F.2d at 670. The district court had granted summary judgment in defendants' favor on Quives's claim under 42 U.S.C. § 1983, holding that defendants were entitled to qualified immunity because defendants "could not reasonably be charged with knowledge that they might be violating a clearly established right of the Plaintiff." Id.[9] On appeal, we analyzed whether Quives had stated a claim of a constitutional violation and, concluding that she had failed to state a constitutional claim, affirmed the judgment of the district court without reaching the issue of qualified immunity. Id. We recognized that, because Quives involved an appeal from a final judgment granting the defendants' motion for summary judgment asserting qualified immunity, the procedural posture of Quives was different from that in Siegert stating:
 
 
 11
 [I]n light of the fact that the Supreme Court has recognized the question of failure to state a claim as "an analytically earlier stage of the inquiry into qualified immunity," we read Siegert as directing us to make that initial inquiry here, just as we would in a Mitchell v. Forsyth appeal from the denial of qualified immunity.
 
 
 12
 Id. at 670 (citations omitted).
 
 
 13
 We had the opportunity to examine such a Mitchell v. Forsyth appeal from a denial of a summary judgment motion asserting qualified immunity in Samaad v. City of Dallas.[10] In Samaad, the district court dismissed the plaintiffs' pendent claims and granted summary judgment in defendants' favor on all the federal claims except the equal protection claim, ordering that limited discovery should proceed on the public official's claim of qualified immunity. 940 F.2d at 928. The district court concluded that "it is true that if Plaintiffs' allegations are true, Defendants' actions violated clearly established constitutional law by intentionally discriminating against Plaintiffs on the basis of race." Id. at 940. The district court, concluding that a city official's entitlement to qualified immunity depended on whether "a discriminatory animus infected his actions," ordered additional discovery as to this official's intent. Id. at 940. The defendant-official appealed the district court's order that discovery should proceed with respect to the equal protection claim. Id. at 928.
 
 
 14
 On appeal, we considered first "whether the plaintiff asserted a 'violation of a clearly established right at all,' " id. at 940, quoting Siegert v. Gilley, --- U.S. ----, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991), and concluded that while
 
 
 15
 the district court essentially followed th[e] mandated analysis in first concluding that 'if Plaintiffs' allegations are true, Defendants' actions violated clearly established constitutional law by intentionally discriminating against Plaintiffs on the basis of race[,]' [w]e ... disagree with that conclusion; in fact, ... plaintiff did not allege a constitutional violation at all, 'clearly established' or not, for the complaint does not state facts that, even if true, would constitute a violation of the Equal Protection Clause.
 
 
 16
 Id. at 940-41. We found that plaintiffs failed to state a constitutional violation and, therefore, we reversed the summary judgment insofar as it denied the official's claim of qualified immunity. Id. at 942.
 
 
 17
 This appeal involves a denial of defendants' motion for summary judgment asserting qualified immunity. While the parties did not brief or argue the constitutional issue on appeal, Siegert, Quives, and Samaad instruct us that in a case where a defendant asserts such a qualified immunity defense, we should first resolve the constitutional question -- that is, whether Duckett has stated a claim for a violation of a right secured to him under the United States Constitution. See Siegert, 111 S.Ct. at 1793; Samaad, 940 F.2d at 940; Quives, 934 F.2d at 670.
 
 B.
 
 18
 Duckett contends--and the district court agreed that there is a factual dispute on this issue--that he was held in custody longer than necessary because the defendants knew the arrest warrant was invalid. An individual has a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint of liberty and violation of this right may be grounds for suit under 42 U.S.C. § 1983. See Dennis v. Warren, 779 F.2d 245, 247 (5th Cir.1985). An arrest or detention may be unlawful if it is accomplished without due process of law as required by the Constitution. See Baker v. McCollan, 443 U.S. 137, 144-45, 99 S.Ct. 2689, 2694-95, 61 L.Ed.2d 433 (1979). Police officers are, therefore, required under the Fourth Amendment to make a determination of probable cause before any significant pretrial restraint of liberty. See id. at 142-43, 99 S.Ct. at 2694, citing Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). A police officer has probable cause to arrest if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime. See Gladden v. Roach, 864 F.2d 1196, 1199 (5th Cir.), cert. denied, 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989).
 
 
 19
 We seek to determine res nova whether a police officer has an obligation to release an individual arrested pursuant to a valid warrant when, subsequent to the arrest, the officer receives information regarding the invalidity of the warrant. Our inquiry is guided by two cases concerning a police officer's duty to release a suspect after he determines that the reasons for the initial arrest were invalid. See McConney v. City of Houston, 863 F.2d 1180 (5th Cir.1989); Thompson v. Olson, 798 F.2d 552 (1st Cir.1986).
 
 
 20
 In Thompson, the First Circuit, examining a state-law claim of false imprisonment, observed that a police officer's initial finding of probable cause justifies an arrest and detention for the purpose of bringing the arrestee before a magistrate. Id. at 556, citing Gerstein v. Pugh, 420 U.S. 103, 113-14, 95 S.Ct. 854, 862-63, 43 L.Ed.2d 54 (1975). The court cautioned, however, that "a police officer, upon an initial finding of probable cause, may [not] close his eyes to all subsequent developments.... Probable cause to arrest does not suspend an officer's continuing obligation to act 'reasonably.' " Id. The court went on to say that an officer, "having once determined that there is probable cause to arrest ... should not be required to reassess his probable cause conclusion at every turn, whether faced with the discovery of some new evidence or a suspect's self-exonerating explanation from the back of the squad car." Id. Although an officer may not "close his eyes to all subsequent developments," id., he need not continually reevaluate the lawfulness of the detention. The court concluded, however, that a police officer has an affirmative duty to release an arrestee if he ascertains beyond a reasonable doubt that the probable cause which formed the basis for the arrest was unfounded. Id.
 
 
 21
 We applied this same principle in McConney v. City of Houston, 863 F.2d 1180 (5th Cir.1989). In McConney, police officers found McConney, a diabetic, in a rain-filled ditch one evening in Houston. Id. at 1182. After examining McConney's physical condition, paramedics diagnosed that McConney was intoxicated with an unknown substance. Id. Based on the paramedics' diagnosis and McConney's physical reactions, McConney was arrested for public intoxication and was taken to the city jail. Id. McConney was subsequently taken to a holding cell and then to a regular cell where he remained overnight. Id. at 1183. Plaintiff, alleging violations of the Fourth and Fourteenth Amendments, brought a § 1983 suit against the City of Houston and other city officials. Id. McConney claimed that his constitutional rights had been violated because, even though he was not intoxicated,[11] the City detained him pursuant to a four-hour detention rule. In considering the question whether a detention following a lawful warrantless arrest is unconstitutional, we "generally agree[d]" with the approach taken in Thompson, id. at 1185, and concluded "that a person may constitutionally be detained for at least four or five hours following a lawful warrantless arrest for public intoxication without the responsible officers having any affirmative duty during that time to inquire further as to whether the person is intoxicated, even if requested to do so." Id. We stated further that once a police officer ascertains beyond a reasonable doubt that the reasons which gave rise to the initial lawful arrest become invalid, the arrestee should be released. Id.
 
 
 22
 Thompson and McConney were concerned with developments subsequent to a warrantless arrest that might detract from the initial probable cause determination. Thompson articulated the standard that, following a lawful warrantless arrest, a police officer has an affirmative duty to release an arrestee if he ascertains beyond a reasonable doubt that the probable cause which formed the basis for the arrest was unfounded. See Thompson v. Olson, 798 F.2d 552, 556 (1st Cir.1986). We adopted this principle in McConney v. City of Houston and enunciated the rule that a police officer must release an arrestee if he ascertains beyond a reasonable doubt that the reasons for the initial arrest are no longer valid. In McConney, we expressly left open the question of the appropriate standard when a suspect is arrested pursuant to a warrant. See McConney, 863 F.2d at 1185 n. 3. We now hold that a plaintiff may state a constitutional claim if, after the police officers make an arrest pursuant to a warrant, the police officers fail to release the arrestee after they receive information upon which to conclude beyond a reasonable doubt that such warrant had been withdrawn.[12]
 
 
 23
 We find that Duckett, having alleged that his overnight detention in the jail was unconstitutional because the Defendants knew the warrant was invalid, has stated a constitutional challenge under 42 U.S.C. § 1983.
 
 C.
 
 24
 We now turn to the issue of defendants' entitlement to qualified immunity, which shields certain public officials performing discretionary functions from civil damage liability if "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The protections afforded by the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law. Id. at 639, 107 S.Ct. at 3038. This court does not ascertain solely whether the law was settled at the time of defendants' conduct, but rather, whether, when measured by an objective standard, a reasonable police officer would have known that his conduct was illegal. See Matherne v. Wilson, 851 F.2d 752, 756 (5th Cir.1988). "[E]ven if a defendant's conduct actually violates a plaintiff's constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir.1990), citing Melear v. Spears, 862 F.2d 1177, 1188 (5th Cir.1989) (Higginbotham, J., concurring). Accordingly, we review the summary judgment record to ascertain the objective reasonableness of the defendants' actions. See id.
 
 
 25
 The summary judgment evidence reflects that the defendants received information which impinged on the warrant's validity on three separate occasions. Hamilton initially stopped the motor vehicle Duckett was driving because of Duckett's failure to dim his headlights. After stopping Duckett, Hamilton ran a computer check which revealed the warrant for Duckett's arrest. Duckett protested that the warrant had been withdrawn but he was nevertheless arrested pursuant to a warrant issued by Williamson County. Because the warrant was facially valid, Hamilton had probable cause to arrest Duckett. The warrant under which Duckett was arrested and detained met the standards of the Constitution. See Baker v. McCollan, 443 U.S. 137, 142-43, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979) (requires a fair and reliable determination of probable cause as a condition for deprivation of liberty); see also United States v. McDonald, 606 F.2d 552, 553-54 (5th Cir.1979) (NCIC printout indicating an outstanding warrant suffices to establish probable cause for that person's arrest); United States v. Roper, 702 F.2d 984, 989 (11th Cir.1983) (officer had probable cause to arrest where officer radioed NCIC and learned of warrant).[13] Based on information known to Hamilton--including Duckett's protestations that the warrant had been withdrawn--we find that Hamilton's actions in arresting Duckett were objectively reasonable.
 
 
 26
 Duckett was then taken to the police station, where, upon seeing Officer Newsom, he inquired as to the validity of the arrest warrant. Newsom responded to Duckett's inquiry by saying that he would check on the warrant the next morning. Later that evening, Hamilton contacted Duckett's mother who told him that the warrant had been withdrawn. Acting on this information, Hamilton sought to ascertain the validity of this information by obtaining a teletyped confirmation from Williamson County. Indeed, the confirmation showed an outstanding warrant for Duckett's arrest. We conclude--based on defendants' knowledge concerning the warrant's validity during this period of Duckett's detention--that defendants were objectively reasonable in not releasing him.
 
 
 27
 The following morning, on June 3, the police officers obtained a teletyped confirmation from Williamson County which stated "RECEIVED A WARRANT RECALL THIS MORNING ON THIS WARRANT WANTED TO ADVISE YOUR DEPT TO CANCEL." Based on this information, the police officers promptly released Duckett from custody. We find that the defendants' actions--in not releasing Duckett prior to the teletyped confirmation indicating that Duckett's arrest warrant had been withdrawn--were objectively reasonable.
 
 IV. CONCLUSION
 
 28
 Finding that the defendants' conduct was objectively reasonable, we REVERSE the district court's denial of defendants' motion for summary judgment and REMAND for entry of judgment for defendants Newsom and Hamilton.
 
 
 
 [1]
 This is an offense under Texas law. See Tex.Rev.Civ.Stat.Ann. art. 6701d, § 127 (Vernon 1977)
 
 
 [2]
 In July 1986 a warrant for Duckett's arrest was issued by Williamson County, Texas. On May 15, 1987 Randall Nichols, an investigator for the Williamson County Attorney's office, gave Officer Newsom (Cedar Park's Chief Warrant Officer) a number of warrants for the arrest of Cedar Park residents. Newsom contacted Duckett's mother, who served as Mayor of Cedar Park, regarding the warrant for Duckett's arrest. Duckett's mother informed Newsom that she had been told Duckett's warrant had been taken care of and that Williamson County assured her that it would be taken off the statewide computer. Newsom wrote "Has been taken care of" on the warrant card and returned the warrant card to Nichols. Nichols told Newsom he would investigate the warrant for Duckett. The criminal case against Duckett which gave rise to the warrant was dismissed May 28, 1987. Williamson County did not delete the warrant from the TCIC computer, however, until the morning of June 3, 1987--after Duckett's arrest and overnight detention
 
 
 [3]
 Newsom claims that he was not aware that Duckett's June 2 arrest had resulted from the same warrant he discussed with Duckett's mother
 
 
 [4]
 On September 3, 1987, Duckett dismissed his claims against all defendants except the City, Chief of Police Phillips, Chief Warrant Officer Newsom, and Police Officer Hamilton. Duckett's claim against Phillips was dismissed on December 23, 1987. Officer Newsom died during the pendency of these proceedings and his wife Dianne Newsom was substituted as representative of his estate. Hamilton and Dianne Newsom are the only defendants in this appeal
 
 
 [5]
 Duckett claimed the following actions constitute violations of his federally protected rights: (i) the original arrest by Officer Hamilton; (ii) the failure of Hamilton and Newsom to release Duckett from custody after they learned about the warrant's invalidity; (iii) the defendants' failure to release Duckett on a $500 cash bond; and (iv) Cedar Park's alleged custom or policy that permitted the defendants' actions
 
 
 [6]
 The district court granted summary judgment on Duckett's illegal arrest claim against Hamilton and on Duckett's claim regarding defendants' failure to release Duckett on bail, but denied the motions for summary judgment in all other regards
 
 
 [7]
 Siegert v. Gilley, 895 F.2d 797 (D.C.Cir.1990)
 
 
 [8]
 Marine Maria Quives was dismissed from her job as a services assistant at the Fort Worth State School, a state facility. After pursuing the established grievance procedure, Quives was reassigned to a different position than that of a services assistant. Quives then, claiming a denial of due process and asserting pendent state claims, filed suit under 42 U.S.C. § 1983 against various school officials, contending that she should have been reinstated as a services assistant. After the parties filed motions for summary judgment, the district court denied Quives's motion for summary judgment, dismissed the state law claims without prejudice, and granted summary judgment in defendants' favor. 934 F.2d at 669
 
 
 [9]
 The district court also held, in the alternative, that Quives had not been denied due process. Id. at 669
 
 
 [10]
 The Samaad plaintiffs sued defendants under 42 U.S.C. § 1983, contending that defendants' operation of two automobile races in a public park near their homes denied them equal protection of the laws and resulted in a taking of their property without due process of law. Plaintiffs also stated pendent state and local law claims. 940 F.2d at 928
 
 
 [11]
 McConney testified that he had not consumed any "intoxicants, marihuana, 'tablets or pills' ... and was not intoxicated at any time on that date." 863 F.2d at 1183
 
 
 [12]
 We do not hold that police officers must conduct an investigation regarding the warrant's validity. See Baker v. McCollan, 443 U.S. at 145-146, 99 S.Ct. at 2695 ("[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.") (footnote omitted)
 
 
 [13]
 The defendants also had probable cause to arrest Duckett because of his failure to dim his headlights. See Gassner v. City of Garland, 864 F.2d 394, 398-99 & n. 5 (5th Cir.1989)