**Wayne McDANIEL, Plaintiff,**

v.

**SOUTHERN PACIFIC TRANSPORTATION d/b/a Southern Pacific Railroad, Defendants.**

No. 3:94–CV–1917–X.

United States District Court, N.D. Texas, Dallas Division.

Dec. 13, 1995.

John Milton Gillis, Law Office of John M. Gillis, Dallas, TX, for Wayne McDaniel.

Katherine Johnson Knight, Dallas, TX, Mark Alan Calhoun, LeAnn Wainscott Cross,

Calhoun & Stacy, Dallas, TX, for Southern Pacific Transportation.

Randall B. Isenberg, Dallas, TX, pro se.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Now before the Court are Defendant Southern Pacific Transportation Company, d/b/a Southern Pacific Railroad's Motion for Summary Judgment filed on May 24, 1995 and Defendant Southern Pacific Transportation Company, d/b/a Southern Pacific Railroad's Supplement to Motion for Summary Judgment filed on September 22, 1995. After careful consideration of the motion, the response and the applicable law, the Court is of the opinion that no genuine issue of material fact exists. Accordingly, the Court determines that the motion should be, and is hereby, **GRANTED.** The Clerk of the Court is hereby **ORDERED** to provide all parties with notice of this memorandum opinion and order.

### Factual Background

Plaintiff Wayne McDaniel ("McDaniel") filed a personal injury action against South-ern Pacific Transportation ("Southern Pacific") on June 14, 1994 in state court. Southern Pacific removed the action based upon diversity jurisdiction on September 7, 1994.

McDaniel was injured on November 10, 1993 when a Southern Pacific freight train struck his truck as he crossed a railroad intersection located on Plainview Road in Midlothian, Ellis County, Texas ("Plainview Crossing"). McDaniel alleges that Southern Pacific is liable for certain acts of negligence including (1) failing to sound the train's horn or whistle as the train approached the crossing (Plaintiff's Original Petition at ¶ 3) and (2) maintaining an extra hazardous crossing and failing to utilize extraordinary means to warn drivers of the approaching train (Pl. Orig.Pet. at ¶ 5). The Plainview Crossing relied upon reflectorized crossbucks [1] to warn drivers of the presence of a railroad crossing.

Southern Pacific now moves for summary judgment on McDaniel's claims based upon the Federal Railroad Safety Act of 1970 ("FRSA"), 45 U.S.C. §§ 421–447 and federal grade crossing regulations 23 C.F.R. §§ 646.214(b)(3) and (b)(4) [2]. Southern Pacific argues that federal law preempts

---

**1.** Crossbucks, the X-shaped signs spelling out "RAILROAD CROSSING," are warning devices that face oncoming traffic on each side of the crossing. The crossing at issue was not equipped with automatic barrier gates or flashing signal lights.

**2.** §§ 646.214(b) states as follows:

(b) Grade crossing improvements

(1) All traffic control devices proposed shall comply with the latest edition of the Manual on Uniform Traffic Control Devices for Streets and Highways supplemented to the extent applicable by State standards.

(2) Pursuant to 23 U.S.C. 109(e), where a railroad-highway grade crossing is located within the limits of or near the terminus of a Federal-aid highway project for construction of a new highway or improvement of the existing roadway, the crossing shall not be opened for unrestricted use by traffic or the project accepted by FHWA until adequate warning devices for the crossing are installed and functioning properly.

(3)(i) "Adequate warning devices," under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:

(A) Multiple main line railroad tracks.

(B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.

(C) High Speed train operation combined with limited sight distance at either single or multiple track crossings.

(D) A combination of high speeds and moderately high volumes of highway and railroad traffic.

(E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of school buses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.

(F) A diagnostic team recommends them. ·

(ii) In individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable.

(4) For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA.

McDaniel's claims of inadequate warnings and that it is entitled to judgment on that claim. The Defendant's summary judgment motion does not address McDaniel's claim of the train's failure to sound a warning or to blow its horn as it approached the intersection.

### Summary Judgment Standard

The movant in a summary judgment context must show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir.1991). The existence of a genuine issue of material fact is determined based on whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 2510, 2512, 91 L.Ed.2d 202 (1986). In other words, "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1504 (5th Cir. 1988). An issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir.1994). At the summary judgment stage, a district court may not weigh the evidence or determine the truth of the matter but should only decide the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510-11.

The rules allocating the burden of proof guide a court in a summary judgment analysis, *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir.1991), and that allocation depends on the burden of proof that would apply at trial. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Russ v. International Paper Co.*, 943 F.2d 589, 591 (5th Cir.1991), *cert. denied*, 503 U.S. 987, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune*,

837 F.2d 233, 239 (5th Cir.1988). When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir.1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits and other competent evidence,[3] "[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

Although a court must "review the facts drawing all inferences most favorable to the party opposing the motion," *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir.1993) (quoting *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986)), the nonmovant may not rest on mere allegations or denials in its pleadings; in short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. The existence of a mere scintilla of evidence will not suffice. *Id.* at 252, 106 S.Ct. at 2512. When the nonmoving party fails to make the requisite showing and the moving party has met his summary judgment burden, the movant is entitled to summary judgment. FED. R.CIV.P. 56(c); *Campbell v. Sonat Offshore Drilling*, 979 F.2d 1115, 1119 (5th Cir.1992).

### Discussion

In this summary judgment motion, the Defendant argues that the Supreme Court has held that state law claims of inadequate signals and warnings are preempted by FRSA and the federal regulations codified at 23 C.F.R. §§ 646.214(b)(3) and (4). *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). The Defendant also states that the Fifth Circuit has recently interpreted *Easterwood* to hold that claims of inadequate warning signals

---

3. *See* FED.R.CIV P. 56(e).

and excessive speed are preempted by federal law. *Hester v. CSX Transportation, Inc.,* 61 F.3d 382 (5th Cir.1995).

Plaintiff responds that *Easterwood* holds only that claims of excessive speed are preempted and the *Hester* can be distinguished from the case at issue on the facts.

*Federal Preemption of State Law Claim of Inadequate Warnings*

In the Federal Railroad Safety Act (FRSA), 45 U.S.C.A. §§ 421–447, Congress sought to "promote safety in all areas of railroad operations[,] ... to reduce railroad-related accidents, ... to reduce deaths and injuries to persons and to reduce damage to property caused by accidents involving any carrier of hazardous materials." *Id.* at § 421. FRSA directed the Secretary of Transportation to "undertake a coordinated effort toward the objective of developing and implementing solutions to the grade crossing problem" under the authority of FRSA as well as under the Secretary's authority over highway, traffic, and motor vehicle safety. *Id.* at § 433. This mandate implicated the Highway Safety Act ("HSA"), 23 U.S.C.A. §§ 401–410, which provides that the Secretary is responsible for developing uniform standards and approving state designed highway safety programs as an antecedent condition to states receiving federal highway funds. Carrying out this edict, the Secretary, through the Federal Highway Administration, prescribed the Manual on Uniform Traffic Control Devices for Streets and Highways (MUTCD). *See* 23 C.F.R. § 655.601. Railroads and highways find a nexus in Title 23, which includes the Highway Safety Act, in the definition of "highway," which includes "railroad-highway crossings." 23 U.S.C.A. § 101.

In *Easterwood,* the Supreme Court considered whether the FRSA preempted a plaintiff's common law negligence claim that the railroad crossing where her husband was killed had inadequate warning signals. *Easterwood,* 507 U.S. at 672–74, 113 S.Ct. at 1742. FRSA contains an express preemption provision. Congress declared that

laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. 45 U.S.C. § 434.

This section plainly states that there is no preemption until the Secretary adopts a rule or regulation covering the same subject matter as state law.

The question then arises of whether the Secretary has adopted a rule or regulation which covers the subject matter of the state requirement. Under HSA "federal funds [are made] available to all States to improve grade crossings, in return for which the States must conduct and systematically maintain a survey of all highways to identify those crossings which may require ... protective devices, and establish and implement a schedule of projects for this purpose." *Easterwood,* 507 U.S. at 663, 113 S.Ct. at 1737. In *Easterwood,* the Court held that regulations which establish particular requirements governing the installation of warning devices at grade crossings do cover the subject matter of state tort law and could have preemptive effect. *See Hester v. CSX Transportation,* 61 F.3d 382, 385 (5th Cir. 1995). The regulations set forth in 23 C.F.R. § 646.214(b)(3) and (b)(4) establish the kinds of particular requirements which will be given preemptive effect, where applicable. *Id.*

§ 646.214(b)(3) and (b)(4) require that any project to improve a grade crossing must either include an automatic gate or receive FHWA approval if federal funds participate in the installation of the devices. *Id.* at 385. Accordingly, the regulations establish a federal law requirement that either specific protective devices be installed or federal approval be obtained. Consequently, these regulations effectively displace any state or private decision-making authority. At any crossing where federal funds participate in the installation of the warning devices, the Secretary of Transportation has determined the devices to be installed and the criteria used in the selection of such devices. Under Fifth Circuit interpretation

of *Easterwood* and its holding, claims of inadequate warnings or signalization will be preempted if federal funds "participated" in the installation of "warning devices" at the fateful crossing. Thus, the Court must turn to and determine whether federal funds "participated" at the Plainview Crossing where McDaniel was struck by the Southern Pacific freight train.

In its summary judgment motion and the attached affidavits and exhibits, Southern Pacific has presented evidence showing that from 1977 to 1981 funds approved under Section 203 of the Federal–Aid Highway Act of 1976 were expended in the upgrading or installation of reflectorized crossbucks, number-of-track signs, pavement markings and stop lines at all Southern Pacific public road crossings[4]. This evidence includes the affidavit of Darin Kosmak, the Railroad Liaison Manager, Traffic Operations Division for the Texas Department of Transportation ("TxDOT") and TxDOT records. The affidavit and exhibits also show that federal funds were approved and expended, from 1989 to the early 1990s, in the course of an upgrading project which provided for applying reflectorized tape to the backs of crossbucks.

McDaniel argues that there is no evidence in the record that the Plainview Crossing and the warning devices installed there were the result of an expenditure of federal funds. He bases this argument on the fact that the Kosmak exhibits and records provide no specific individualized information on the Plainview Crossing. McDaniel argues that Kosmak has no knowledge and cannot tell from his records whether the crossbucks at the Plainview Crossing were reflectorized using federal funds. The records from the TxDOT refute this argument. The records included with the affidavit indicate that TxDOT was required by state law to upgrade all at-grade railroad crossings in order to improve and to enhance warning sign visibility. (Def.Ex. to Summ.Jud. at 11). The TxDOT crews were authorized to install the reflectorization kits and to replace any missing crossbuck signs. (*Id.* at 12). Regulations adopted by the

TxDOT, Bridge Division provide that "[r]etroreflectorized material shall be affixed to the back of the crossbucks and support posts at all public railroad grade crossings not protected by active warning devices...." (*Id.* at 17). Additionally, "each railroad company owning ... a nonsignalized crossing shall permit ... [TxDOT] personnel to enter railroad company property [to] affix[ ] retroreflectorized material to the backs of crossbucks and support posts." (*Id.*). The photographs of the crossbucks at the Plainview Crossing clearly show reflectorized tape attached to the support posts of the crossbucks. (*See* Defendant's Ex. 7). These exhibits when taken together and in a light most favorable to the Plaintiff reveal that there is no genuine issue of material fact regarding whether federal funds participated in the upgrading of the crossbucks with reflectorized tape.

However, even if Plaintiff were able to show an issue of genuine issue of material fact regarding the reflectorized tape project, Plaintiff has not addressed the participation of federal funds in the installation or upgrading of the warning devices in 1977 to 1981. Southern Pacific has presented evidence showing that from 1977 to 1981 funds approved under Section 203 of the Federal–Aid Highway Act of 1976 were expended in the upgrading or installation of reflectorized crossbucks, number-of-track signs, pavement markings and stop lines at all Southern Pacific public road crossings. The affidavit of Darin Kosmak and the TxDOT records reveal that the Plainview Crossing is located in the Dallas District or District 18. (Def.Ex. to Summ.Jud. at 3). The records also show that the TxDOT awarded 3 separate contracts and allotted a total sum of $1,249,-467.67 to upgrade all crossings in the district. *Id.* Kosmak states in his affidavit that the 3 separate contracts were awarded based upon the installation and upgrading project which was 100% federally funded. (Kosmak Aff. at 2). The Plaintiff did not present evidence sufficient to create an issue of genuine material fact with regard to the participation of federal funds in the installation of the warn-

---

4. The Plainview Crossing does not have any of the triggering requirements found in § 646.214(b)(3). Accordingly, the types of warn-

ing devices required at the crossing are controlled by the catch-all provision found in § 646.214(b)(4).

ing devices at the Plainview Crossing. The Court concludes that federal funds did participate. Accordingly, the Defendant's motion for summary judgment should be, and is hereby **GRANTED.**

**SO ORDERED.**