**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-10231

_____


KATHLYN SORENSON,

Plaintiff-Appellant,

VERSUS

STEVE FERRIE and JAMES M. WALLING,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Texas
_____

February 11, 1998

Before WISDOM, SMITH, and DeMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


Kathlyn Sorenson sued police officers Steve Ferrie and James Walling under 42 U.S.C. § 1983 after they arrested her for carrying a handgun in the trunk of her car. The district court granted summary judgment for the officers on the basis of qualified immunity. We affirm.


I.

A.

Ferrie stopped Sorenson as she drove away from a darkened stable in Rowlett, Texas, around 3:00 a.m. on May 13, 1995.

Thinking the stable was closed at this wee hour and aware of recent vandalism at nearby stables, Ferrie asked Sorenson to explain her business. She said she had been feeding her horses and was on her way to work as a security guard.

Sorenson then volunteered to open her trunk to show Ferrie her horse equipment. She pointed to an empty feed bucket, but the officer focused on another object in the trunk: Sorenson's pistol, nestled in a holster attached to a belt. Ferrie asked Sorenson why she carried a pistol in her trunk; she replied that she needed it for her job, adding that in Texas, it is not unlawful to transport a pistol in the trunk of one's car. She also produced photo identification indicating that she was a licensed security guard.[1]

Sergeant James Walling soon arrived on the scene. The officers conferred, then attempted to confirm Sorenson's story by calling the Dallas nightclub where she said she was headed to pick up the evening's receipts. No one answered, so Ferrie directed Sorenson to call her supervisor. Instead, Sorenson called her husband, who told Walling that he, Mr. Sorenson, was a certified firearms instructor and that it was legal for Texans to carry handguns in automobile trunks. Walling disputed Mr. Sorenson's reading of the Texas Penal Code, and the call ended.

Ferrie and Walling decided to arrest Sorenson. They asked her whether she was carrying any more firearms, and she directed them to another gun inside a purse in the spare-tire compartment of the

---

[1] Although Texas law allows a licensed security guard to carry a handgun, this exception applies only when he is wearing a distinctive uniform and the gun is in plain view. *See* TEX. PENAL CODE ANN. § 46.02(b)(5).

trunk. The officers brought Sorenson to the station and filed criminal charges.

B.

Sorenson was charged with unlawfully carrying a weapon in violation of TEX. PENAL CODE ANN. § 46.02(a), which provides that "[a] person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club." Several months later, the Dallas County prosecutor dismissed the charge, conceding that "the state is unable to make a prima facie case."

II.

In seeking summary judgment, the officers argued that § 46.02(a) is ambiguous and that their interpretation of the statute was reasonable. They introduced affidavits stating that (1) officers were taught during training that carrying a handgun in the trunk may be unlawful; (2) Ferrie had participated in the arrest of another suspect for carrying a handgun in the trunk; and (3) the officers knew of prosecutions in Dallas County for carrying handguns in the trunk. The magistrate judge's report, adopted by the district court, concluded that the legality of carrying a handgun in one's trunk was not clearly established under Texas law at the time of the incident.

### III.

Government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Claims of qualified immunity are reviewed under a two-step analysis. The first question is whether the plaintiff has asserted the violation of a clearly established constitutional right. If so, the court decides whether the defendants' conduct was objectively reasonable. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (applying the two-pronged test of *Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991)).

### IV.

Sorenson charges that the officers violated her right to be free from illegal arrest, as secured by the Fourth and Fourteenth Amendments. This is a clearly established constitutional right.[2] Whether an arrest is illegal, however, hinges on the absence of probable cause. *Baker v. McCollan*, 443 U.S. 137, 144-45 (1979).[3]

---

[2] *See Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995) (acknowledging the "right under the Fourth and Fourteenth Amendments to be free from . . . false arrest"); *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992) ("An individual has a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint of liberty and violation of this right may be grounds for suit under 42 U.S.C. § 1983.").

[3] "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquittedSSindeed, for every suspect released." *Id.* at 145. Instead, "Police officers are . . . required under the Fourth Amendment to make a determination
(continued...)

4

Thus, if Sorenson cannot show that the officers lacked probable cause, she has failed to state the violation of a constitutional right, and the officers are entitled to qualified immunity.

Probable cause depends on whether the officers "possess[ed] knowledge that would warrant a prudent person's belief that [the suspect] had already committed or was committing a crime." *Eugene*, 65 F.3d at 1305.[4] Thus, the central question in our qualified immunity inquiry is "the objective (albeit fact-specific) question whether a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).[5]

Sorenson cannot satisfy *Siegert*'s first prongSSthe need to allege the violation of a clearly established constitutional rightSSmerely by asserting that the right not to be arrested without probable cause is clearly established. Instead, she must show that *the legality of her conduct* was clearly established.

---

(...continued)
of probable cause before any significant pretrial restraint of liberty." *Duckett*, 950 F.2d at 278.

[4] *See also Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) ("[W]e must look to whether [the plaintiff] has alleged sufficient facts from which it can be discerned that no reasonable officer could have believed that probable cause existed to arrest him . . . ." (Citation omitted.)).

[5] Although the officers' subjective intent is irrelevant to our qualified immunity analysis, *Anderson*, 483 U.S. at 631, we note the evidence supporting Sorenson's claim that Ferrie and Walling acted with improper motives in arresting her. Sorenson's husband stated that the officers told him they were arresting his wife "to prove a point" and that he needed a "new" copy of the Texas Penal Code. At oral argument, the officers' counsel conceded his familiarity with the saying, "You can beat the rap, but you can't beat the ride," but insisted that Sorenson's night in jail was not the result of a personal grudge.

That is to say, she must demonstrate that, at the time of her arrest, it was clearly established in Texas that one may lawfully possess a handgun in one's trunk. If the law was not clearly established, "a reasonable officer could have believed the arrest to be lawful." *Anderson*, 483 U.S. at 641. Particularly in situations where—as here—the statutory language is vague, the caselaw must draw a bright line in order for the law to be classified as "clearly established." *See Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994).[6]

V.

A.

The law at issue here is TEX. PENAL CODE ANN. § 46.02(a), which, subject to listed exceptions in § 46.02(b), (c), and (d), punishes anyone who "carries on or about his person a handgun." The relevant question is whether, at the time of Sorenson's arrest, the courts' interpretation of § 46.02 had clearly established the law as applied to guns carried in the trunk of a car. We conclude that the state law in that regard was *not* clearly established. Accordingly, Sorenson fails under *Siegert*'s first prong, because she has not shown that the officers lacked probable cause to arrest her. The Fourth Amendment's protections are triggered only in the

---

[6] We do not mean to suggest that all conduct is presumptively illegal unless proven otherwise. For example, a plaintiff arrested for innocently walking down a public street need not identify a statute or case in order to validate his conduct. What distinguishes this case is that Sorenson's conduct arguably falls within the statutory language and the surrounding caselaw. That is why we require her to demonstrate the legality of her conduct to establish the absence of probable cause.

*absence* of probable cause; the officers therefore did not violate a constitutional right.

B.

There is a dearth of reported cases directly addressing the legality, under Texas law, of carrying a handgun in one's trunk.[7] Nonetheless, Texas courts have set down general principles governing when a handgun is carried "on or about" one's person.

The general rule in Texas is that "on or about" the person means "close at hand" or "within reach." This rule was first articulated in *Wagner v. State*, 188 S.W. 1001, 1002 (Tex. Crim. App. 1916), in which the court construed a predecessor to § 46.02, holding:

> The Legislature must have meant something when it used the words, "or about the person," and, on principle, using the word "about" in its ordinary meaning, taking into consideration the context and subject-matter relative to which it is employed, the word, not being specially defined, must, as we believe, be held to mean, within the pistol statute, near by, close at hand, convenient of access, and within such distance of the party so having it as that such party could, without materially changing his position, get his hand on it. . . .

Over the years, Texas courts have echoed this formulation and have applied it to a variety of factual settings. In *Boles v.*

---

[7] Sorenson directs us to a 1988 civil forfeiture case, *$2067 in U.S. Currency v. State*, 745 S.W.2d 109, 112 (Tex. App.SSFort Worth 1988, no writ). In discussing an officer's seizure of a purse from the trunk of a car, the court noted, "[u]pon opening the vehicle's trunk the officer observed a handgun. Although we can find nothing illegal per se about carrying a handgun in a vehicle's trunk, once the officer saw the gun in the trunk he was justified in taking appellant's purse to see if it contained another weapon." The court's language, concerning a peripheral issue in a civil forfeiture case, is *dictum* that hardly constitutes clearly established law.

*State*, 416 S.W.2d 431, 433 (Tex. Crim. App. 1967), the court held that a knife under the car's floorboard was carried "on or about the person." Similarly, a pistol in the glove compartment was held to violate the statute in *Franklin v. State*, 183 S.W.2d 573, 573-74 (Tex. Crim. App. 1944). And in *Spears v. State*, 17 S.W.2d 809, 810 (Tex. Crim. App. 1929), the court concluded that a pistol stored in the side pocket of the passenger-side door was carried on or about the driver's person.[8]

Our review of the caselaw construing § 46.02 reveals that, over time, most areas of a car's interior have been swept within the statute's ambit. With the exception of a handful of decisions from the turn of the century,[9] the majority of courts have concluded that the statute is violated whenever a gun is found inside the passenger compartment of a carSSeven though, in many such instances, a person would "materially chang[e] his position," *Wagner*, 188 S.W. at 1002, in order to reach the gun.

Sorenson correctly notes that no court has applied the statute specifically to guns carried in the trunk. In *Contreras v. State*, 853 S.W.2d 694 (Tex. App.SSHouston [1st Dist.] 1993), however, the court remarked that the wording of the statute (in this case, another predecessor of § 46.02) "clearly reflected the

---

[8] *See also Flores v. State*, 895 S.W.2d 435, 446 (Tex. App. 1995) (holding that handgun in unlocked console by driver's seat violates statute); *Courtney v. State*, 424 S.W.2d 440, 441 (Tex. Crim. App. 1968) (concluding that handgun in glove compartment violates statute).

[9] The most recent of these cases was decided in 1905; all three involved wagons, not motor vehicles. *See Thompson v. State*, 86 S.W. 1033 (Tex. Crim. App. 1905); *Hardy v. State*, 40 S.W. 299 (Tex. Crim. App. 1897); *George v. State*, 29 S.W. 386 (Tex. Crim. App. 1895).

legislature's view that carrying on or about the person included weapons present *on or within one's personal means of transportation*." *Id*. at 696 (emphasis added). It is not an unreasonable reading of *Contreras* to conclude that a handgun in the trunk is "within the driver's means of transportation." This language only underscores the uncertainty in the law regarding guns in trunks.

C.

The absence of a specific holding on the issue does not preclude qualified immunity. That is because Sorenson, as the plaintiff in a false arrest suit arising under § 1983, bears the burden of proving that the officers lacked probable cause, which in this case means she must show that the legality of her conduct was clearly established. The officers, in contrast, are not required to prove the reverse in order to win qualified immunitySSthat is, the officers do not bear the burden of demonstrating that the *illegality* of the suspect's conduct was clearly established at the time of arrest.[10]

Were officers to bear the burden of proving clearly established law, the first officer to make an arrest under a newly-passed statute could be subjected to personal liability if the prosecutor chose not to press charges. Similarly, the first officer to conclude that an existing statute applies to a new form

---

[10] "The Fifth Circuit does not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992).

of criminal conduct would risk personal liability by making the arrest. "The qualified immunity doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages." *Davis v. Scherer*, 468 U.S. 183, 195 (1984).[11]

As we noted in *Pierce v. Smith*, 117 F.3d 866 (5th Cir. 1997), "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." *Id*. at 882 (quoting *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc)). Given the ambiguity of the statute[12] and the surrounding caselaw, the officers violated no clearly established right, and, accordingly, they are entitled to qualified immunity.

_____

[11] We do not suggest, of course, that an officer is automatically entitled to qualified immunity just because no court has specifically held the plaintiff's conduct legal. "[I]n order to preclude qualified immunity it is not necessary that the very action in question has previously been held unlawful, or that the plaintiff point to a previous case that differs only *trivially* from his case. However, the facts of the previous case do need to be *materially* similar." *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (internal citations and quotation marks omitted). The Supreme Court has said as much in construing liability for a warrantless search. *See Mitchell v. Forsyth*, 472 U.S. 511, 535 n. 12 ("We do not intend to suggest that an official is always immune from liability or suit for a warrantless search merely because the warrant requirement has never explicitly been held to apply to a search conducted in identical circumstances. But in cases where there is a legitimate question whether an exception to the warrant requirement exists, it cannot be said that a warrantless search violates clearly established law.").

[12] We hold only that, for purposes of qualified immunity in this civil case, the law was not clearly established on this question as of the date of this incident. We do not mean to express a view as to whether § 46.02 does or does not prohibit the possession of a weapon in one's trunk. That is for the state courts to decide. Nor do we opine on whether the statute is so vague as to trigger the rule of lenity or any other similar defense.

AFFIRMED.

ENDRECORD

DeMOSS, Circuit Judge, specially concurring.

I concur in the result but not the reasoning of this opinion. In my view, this case involves an arrest that should never have been made and a suit that should never have been filed. First of all, Officers Ferrie and Walling should know precisely what evidence is required by the prosecuting attorney for their jurisdiction in order to accept a borderline case for prosecution. This is a borderline case because there has never been a decision in any Texas court which held that carrying a handgun in the trunk of a car is a violation of Texas Penal Code Ann. § 46.02(a). What Officers Ferrie and Walling could have done (and in my opinion should have done) was to have made detailed notations as to all of the factual information and circumstances presented by this incident and then discussed the facts involved with the prosecuting attorney as to whether he would accept the case for prosecution. If the prosecutor had said yes, they then could have sworn out an arrest warrant based on the facts which they noted down and arrested Ms. Sorenson pursuant to that warrant. There were not in my mind any exigent circumstances necessitating an arrest on the spot.

On the other hand, Sorenson really did not suffer any significant injury or damage as a result of this unnecessary arrest. While her claim is phrased in the language of a constitutional violation, the absence of any real or lasting injury puts her claim in a class which does not warrant consideration by

the federal courts. I sympathize with Sorenson's feelings of aggravation about this incident, but life is full of aggravations of all sorts and the Constitution cannot possibly provide relief in all such cases.