**Tyrone CUNNINGHAM, Plaintiff,**

v.

**John REID, et al., Defendants.**

No. 03–1055–T–AN.

United States District Court,
W.D. Tennessee,
Eastern Division.

July 13, 2004.

Richard Gossum, Gossum Law Firm, Trenton, TN, for Plaintiff.

John D. Burleson, Rainey, Kizer, Reviere & Bell, Jackson, TN, Milton Dale Conder, Rainey, Kizer, Reviere & Bell, Jackson, TN, for Defendants.

## ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TODD, District Judge.

Plaintiff Tyrone Cunningham filed this lawsuit pursuant to 42 U.S.C. § 1983 against Defendants City of Humboldt and City Police Officers John Reid, Phillip McCoy, and Reynard Buchanan, in their individual capacities, alleging that his civil rights were violated during his arrest. Plaintiff has also alleged various state law claims against the individual defendants. The action was originally filed in the Circuit Court of Gibson County, Tennessee. Defendants removed the action to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331.

Defendants have filed a motion for summary judgment. Plaintiff has responded to the motion. For the reasons set forth below, Defendants' motion is PARTIALLY GRANTED and PARTIALLY DENIED.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. To prevail on a motion for summary judgment, the moving party has the burden of showing the "absence of a genuine issue of material fact as to an essential element of the nonmovant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). The moving party may support the motion with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party may not rest upon the pleadings but, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

"If the defendant ... moves for summary judgment ... based on the lack of proof of a material fact, ... [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Rather, "[t]he inquiry on a summary judgment motion ... is ... 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" *Street*, 886 F.2d at 1479 (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505). Doubts as to the existence of a genuine issue for trial are resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The complaint alleges that, on February 18, 2002, Plaintiff was at his residence with his girlfriend, Tina Hudson, and their child. Tina's mother called the Humboldt Police Department and reported that Plaintiff and Tina were fighting. Defendants Reid, McCoy, and Buchanan responded to the call. Tina met the officers at the door with the child in her arms and told the officers that she and Plaintiff were not fighting. When Plaintiff emerged from the shower, Defendant Officers forced him to the floor and injured his wrist and thumb. Defendant Officers then transported Plaintiff, shirtless and shoeless, to the City Hall.

The complaint further alleges that Defendants brought an assault charge against Plaintiff in the Gibson County Juvenile Court even though the charge was groundless. The charge was subsequently dismissed.

Plaintiff alleges that he was subjected to false arrest and imprisonment and assault and battery by Defendant Officers. He also alleges that Defendant Officers violated his civil rights by subjecting him to an unreasonable search and seizure and excessive force. Plaintiff alleges that Defendant City violated his civil rights by inadequately training and supervising its police officers and by inadequately investigating citizen complaints of misconduct.

### STATE LAW CLAIMS

Plaintiff's state law claims of assault and battery, false imprisonment, and false arrest against Defendants Reid, McCoy, and Buchanan must be dismissed. Since Defendants are governmental employees, they are immune from suits based on state law except as provided by the Tennessee Governmental Tort Liability Act, T.C.A. § 29–20–302, *et seq.* ("TGTLA"). This act provides that the circuit courts have exclusive original jurisdiction over claims brought under the Act.

T.C.A. § 29–20–307. *See Beddingfield v. Pulaski,* 666 F.Supp. 1064 (M.D.Tenn. 1987), *reversed on other grounds,* 861 F.2d 968 (6th Cir.1988). Therefore, this court does not have jurisdiction over Plaintiff's state law claims. *Cf. Timberlake v. Benton,* 786 F.Supp. 676 (M.D.Tenn.1992) (Granting the motion to dismiss of the City and the officers in their official capacities pursuant to *Beddingfield* but declining to apply the holding in *Beddingfield* to the officers in their individual capacities.)

Alternatively, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Maxwell v. Conn,* 893 F.2d 1335, 1990 WL 2774 (6th Cir.) (While the federal claims would ordinarily confer jurisdiction over plaintiff's TGTLA claims because they arise out of the same nucleus of operative fact, the decision of the Tennessee legislature to grant original jurisdiction to state circuit courts belies plaintiff's claim that he could expect to try all his claims in the same judicial proceeding, and the district court properly declined to exercise its discretion by extending pendent jurisdiction over the state common law negligence claims because of concerns of jury confusion.) *Accord Spurlock v. Whitley,* 971 F.Supp. 1166 (M.D.Tenn.1997), *aff'd* 167 F.3d 995 (6th Cir.1999) (A court may decline to exercise supplemental jurisdiction if "in exceptional circumstances," there are "compelling reasons for declining jurisdiction," 28 U.S.C. § 1367(c)(4), and the exclusivity provision of the TGTLA provides a compelling reason for this court to decline supplemental jurisdiction of the TGTLA claim.) Accordingly, the state law claims brought against Defendants Reid, McCoy, and Buchanan are dismissed.

### SECTION 1983 CLAIMS

*Defendant Officers*

Plaintiff has alleged that Defendant Officers violated his civil rights by using excessive force against him and by arresting him without probable cause to believe that he had committed a crime, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

█ Defendants have presented the affidavit of Defendant McCoy which states that he entered the house, saw that Plaintiff was handcuffed, and then went outside. Defendants' Exhibit 5, McCoy Affidavit. Defendant did not arrest Plaintiff, see him arrested, use any force against him, or see anyone else use any force against him. *Id.*

Plaintiff has pointed to no evidence in the record that Defendant McCoy took part in the events giving rise to Plaintiff's claims. In fact, Tina Hudson testified in her deposition that she did not remember seeing Defendant McCoy during the fracas. Hudson Depo. at p. 20 ("I don't remember seeing [McCoy] at all.") Plaintiff testified that Defendants Reid and Buchanan arrested him but that he did not remember anyone else. Plaintiff's Depo. at p. 21. He further testified that "two officers" picked him up and threw him down. *Id.* at p. 37. Plaintiff identified these officers as Defendants Reid and Buchanan. *Id.* at p. 46.

Because Defendants have refuted Plaintiff's claim that Defendant McCoy subjected him to an unconstitutional seizure and/or used excessive force against him, Defendant McCoy is entitled to summary judgment on Plaintiff's § 1983 claims. The portion of the motion seeking summary judgment on the § 1983 excessive force claim against Defendants Reid and Buchanan, however, is denied.

█ Claims of excessive force by law enforcement officials are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104

L.Ed.2d 443 (1989).[1] The reasonableness of a seizure is judged from the perspective of the officer on the scene, rather than with hindsight. *Id.* at 396, 109 S.Ct. 1865. Not every push or shove, even if it may later seem unnecessary, violates the Fourth Amendment. *Id.* at 396, 109 S.Ct. 1865. In evaluating a claim of excessive force, a court must determine reasonableness by considering the severity of the crime involved, the threat to the safety of the officer posed by the suspect, and any resistance to arrest. *Id.*

Here, Defendants deny forcing Plaintiff to the floor and injuring him and contend that any force used was reasonable because (1) it took approximately fifteen minutes to get someone to answer the door; (2) the officers had to order Plaintiff out of the bathroom two or three times; (3) the officers were responding to a domestic violence call; and (4) Plaintiff was a suspect in two violent assaults.[2] Defendants also assert that Plaintiff did not complain of being injured and that none of the officers saw anyone using excessive force against Plaintiff. According to Defendants, the officers told Plaintiff to "get on the floor," and Plaintiff complied with this request without any force being used. Buchanan Depo. at p. 37.

Plaintiff has responded with evidence that Defendants Reid and Buchanan "slammed" Plaintiff to the floor at gunpoint. Thomas Depo. at pp. 11–12, 16. Plaintiff cried out when his arm was twisted behind his back. *Id.* at pp. 16–17. Defendant Buchanan took Plaintiff's finger and twisted it. *Id.* at p. 19. Plaintiff testified that the officers "grabbed" him, "threw [him] to the floor," and twisted his arm. Plaintiff's Depo. at p. 20. He also testified that the officers threatened to shoot him. *Id.* at pp. 23, 25.

Plaintiff has also presented evidence that Tina Hudson, Plaintiff's alleged victim, told Defendant Officers that Plaintiff had not hit her and that "everything was all right." Hudson Depo. at pp. 13, 15. Tina did not appear to be upset or in distress when she answered the door. Lisa Thomas Affidavit at para. 3. When Plaintiff emerged from the bathroom, he was shirtless and shoeless. Buchanan Depo. at p. 29. He did not resist the officers or try to escape. *Id.* at p. 40.

When "[t]he parties dispute virtually all of the essential facts surrounding the excessive force claim ... it is impossible to determine, without choosing between the parties' sharply different factual accounts,

---

1. In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that excessive force claims in connection with an arrest, stop, or seizure are to be considered under the Fourth Amendment and its "reasonableness" standard. Claims of excessive force involving an innocent bystander who was not the subject of an arrest, stop, or seizure are to be analyzed under the Fourteenth Amendment and a "shocks the conscience" standard. Here, the proper analysis for Plaintiff's claim of excessive force is under the Fourth Amendment because he has alleged that he was arrested or seized. Therefore, Plaintiff's claims under the Fourteenth Amendment are dismissed.

2. It is not clear whether Plaintiff contends that both Defendants Reid and Buchanan

forced him to the floor or whether it was just Defendant Buchanan. Defendants have cited to portions of Plaintiff's deposition which state that Defendant Buchanan forced him to the floor and that Defendant Reid "was just standing there." Defendants' motion at p. 12 (citing Plaintiff's Depo. at pp. 38–40). However, Plaintiff's grandmother, Eddie Mae Thomas, observed the altercation and testified that Defendant "Buchanan had his foot in [Plaintiff's] back" and Defendant "Reid had his foot on [Plaintiff's] shoulder." Thomas Depo. at pp. 11–12. Because Defendant Reid's participation in the alleged use of excessive force against Plaintiff is disputed, summary judgment is not appropriate for this defendant on this claim.

whether the force the officers used, objectively assessed, was reasonable." *See Jackson v. Hoylman,* 933 F.2d 401, 403 (6th Cir.1991). Because there are disputed issues of fact as to the extent of the force used by Defendants Reid and Buchanan during Plaintiff's arrest and whether that force was reasonable in light of the circumstances, summary judgment is not appropriate on the excessive force claim.

■■■ Defendants also contend that they are entitled to summary judgment on Plaintiff's claim of that his arrest violated the Fourth Amendment. The Fourth Amendment guarantees that officers may not subject citizens to unreasonable searches or seizures without proper authorization. A search or seizure that lacks such authorization is presumptively unreasonable, "subject only to a few specifically established and well-delineated exceptions." *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). When a detention rises to the level of a full-fledged arrest, the Fourth Amendment demands that the seizure be supported by probable cause. *See Dunaway v. New York,* 442 U.S. 200, 212–14, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, an officer may not arrest an individual. *See Dietrich v. Burrows,* 167 F.3d 1007, 1012 (6th Cir. 1999).

■■■ Generally, probable cause exists when the police have "reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). "Probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Dietrich,* 167 F.3d at 1012. However, when "there are sufficient facts to warrant a prudent person in a defendant's position to believe that a crime was committed and that the person charged committed it, the failure to make a further investigation does not negate probable cause." *Coogan v. City of Wixom,* 820 F.2d 170 (6th Cir.1987). A valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent. *Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir.1988).

Plaintiff contends that his Fourth Amendment rights were violated at two points: first, when he was handcuffed and detained after emerging from the bathroom and, second, when he was arrested based on a warrant that was later determined to be invalid.[3] Defendants respond that they had probable cause to arrest Plaintiff pursuant to an outstanding assault warrant and that they are entitled to qualified immunity. Defendants' contentions are well-taken.[4]

■■■ As to Plaintiff's detention between the time he emerged from the bathroom and his arrest, a person may be detained for a brief period without violating the Fourth Amendment until a judicial officer can make a determination of whether there is probable cause to justify continued detention. *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The Court defined this brief period as the time necessary "to take the administrative steps incident to

---

**3.** According to Plaintiff, "the warrant was no good because [he] was still a juvenile and the warrant was an adult warrant." Plaintiff's Depo. at p. 43.

**4.** Plaintiff does not contend that Defendants were at fault in responding to the communication from the Humboldt Police Department dispatcher that an alleged assault was in progress. Instead, Plaintiff contests his subsequent arrest.

arrest." *Id. Accord Bernard v. City of Palo Alto,* 699 F.2d 1023, 1025 (9th Cir. 1983) (per curiam). Thus, a "seizure under the Fourth Amendment need not necessarily be justified by probable cause. A temporary seizure may be justifiable if a reasonable articulable suspicion of criminal activity actually exists." *United States v. Winfrey,* 915 F.2d 212, 216 (6th Cir.1990), *cert. denied,* 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991) (citing *Terry v. Ohio,* 392 U.S. 1, 16–19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

Based on the report that Defendant Officers received that Tina Hudson was being beaten by Plaintiff, *see* Exhibit 12, and the length of time that it took Tina to open the door, a "reasonable articulable suspicion of criminal activity" existed, despite Tina's statement that she was all right.[5] Consequently, the brief detention of Plaintiff did not violate the Fourth Amendment.

Plaintiff's arrest also did not violate the Fourth Amendment. It is undisputed that Defendant Officers were told by the Sheriff's Department that there was an outstanding warrant for Plaintiff's arrest. Even if Plaintiff and his family told Defendant Officers that the warrant was not valid,[6] Defendants were entitled to rely on the existence of a facially valid warrant. *See Duckett v. City of Cedar Park,* 950 F.2d 272 (5th Cir.1992) (Police officer acted reasonably in disregarding claims of arrestee and his family that the warrant had been recalled when officer confirmed the validity of the warrant through official channels); *Mitchell v. Aluisi,* 872 F.2d 577 (4th Cir.1989) (arrest based on facially valid warrant did not violate due process when sheriff's office had not received notice that the warrant had been, as the arrestee had asserted, cancelled); *Lauer v. Dahlberg,* 717 F.Supp. 612 (N.D.Ill.1989) (officer was entitled to rely on information received from LEADS despite having been presented with an uncertified copy of a warrant recall order), *aff'd,* 907 F.2d 152 (7th Cir.1990).

In *Duckett,* the police continued to hold Duckett, whose mother told police that the outstanding warrant had been withdrawn, after they received a teletyped confirmation from the county which showed an outstanding warrant. The next morning they released Duckett after receiving another teletype from the county informing them that the warrant had been withdrawn. Duckett then brought an action for false imprisonment. The Fifth Circuit held that a "plaintiff may state a constitutional claim if, after the police officers make an arrest pursuant to a warrant, the police officers fail to release the arrestee after they receive information upon which to conclude beyond a reasonable doubt that such warrant had been withdrawn." *Id.* at 279. However, there is no requirement that the officers conduct an investigation regarding the warrant's validity. *Id.* at 279 n. 12 (citing *Baker v. McCollan,* 443 U.S. at 145–146, 99 S.Ct. 2689.) The court determined that the officers were entitled to qualified immunity because their actions in not releasing plaintiff prior to the teletyped confirmation indicating that the warrant had been withdrawn were objectively reasonable. *Id.* at 280.

---

5. The refusal of many victims of domestic violence to file a complaint against the alleged abuser is well known to law enforcement officers. *See* Lisa Marie De–Sanctis, "Bridging the Gap Between the Rules of Evidence and Justice for Victims of Domestic Violence," 8 *Yale J.L. & Feminism* 359, 367–68 (1996) (finding that victims of domestic violence are uncooperative in approximately 80 to 90% of criminal prosecutions). Thus, Tina Hudson's statement that she was "all right" could reasonably be given little weight by the officers.

6. Defendants deny that they were told that the warrant was not valid. *See* Buchanan Depo. at p. 52; Reid Depo. at p. 41.

█ In the present case, the existence of a facially valid warrant at the time of the arrest gave Defendant Officers probable cause to arrest Plaintiff. However, even without probable cause, Defendant Officers are qualifiedly immune on this claim.

█ When the defense of qualified immunity is raised, the plaintiff bears the burden of establishing that the "contours" of the constitutionally right allegedly violated were sufficiently clear, at the time of the alleged violation and in relation to the acts committed, "that a reasonable official would understand that his or her conduct violate[d] that right." *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991); *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The plaintiff may not allege the violation in terms of a general, abstract right in order to survive summary judgment. *Anderson*, 483 U.S. at 639–40, 107 S.Ct. 3034. Rather, the plaintiff must establish that "in light of pre-existing law the unlawfulness [was] apparent," *id.* at 640, 107 S.Ct. 3034, such that "any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." *Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989).

█ The determination of whether such a clearly established legal right existed is to be decided by the court as a matter of law. *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir.1987). If the "undisputed facts show that defendant's conduct ... did not violate [that] clearly established legal right[ ]," the court must grant summary judgment for the defendant. *Id.* at 425. If, however, "there is a factual dispute (*i.e.*, a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate[d] clearly established rights," the court must deny summary judgment. *Poe*, 853 F.2d at 426 (parenthetical in original).

As discussed above, Plaintiff has not shown that Defendant Officers violated his federal constitutional right to be free from being arrested without probable cause. Specifically, Plaintiff contends that he had a right to have Defendant Officers investigate his and his family's allegations that the warrant was not valid prior to his arrest. However, such a right was not clearly established at the time of Plaintiff's arrest as indicated by the authority cited in this order. Therefore, Defendant Officers are entitled to qualified immunity.

█ Plaintiff also argues that probable cause for his arrest did not exist because the charges were later dismissed.[7] A valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent. *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir.1988). Therefore, this argument is without merit.[8]

---

7. Plaintiff was issued a juvenile citation for domestic violence.

8. Plaintiff argues that he should not have been cited for domestic violence or assault because "a successful prosecution would be impossible without a complaining witness." Plaintiff's Response at p. 18. Plaintiff is in error. Homicide cases never have a complaining witness and, yet, many prosecutions are successful. The term "victimless prosecu-

tion" is used to refer to a prosecution in which the victim does not testify. *See* Cory Adams, "Deterring Domestic Violence: Prospects for Heightened Success in the 'Victimless' Prosecution of Domestic Violence Cases," 11 *J. Contemp. Legal Issues* 51, 51–52 (2000) ("[O]rdinarily the prosecution of crime features victims, accusers, or witnesses who are willing to testify. City and district attorneys will pursue a domestic violence case when these elements are lacking, but in order

For these reasons, Defendants Reid and Buchanan are entitled to summary judgment on Plaintiff's § 1983 claim of unreasonable search and seizure.

### Claims Against the City

Plaintiff alleges that Defendant City violated his civil rights by inadequately training and supervising its police officers and by inadequately investigating citizen complaints of misconduct.

To prove a claim under § 1983, a plaintiff must establish: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected to or caused to be subjected to this deprivation by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). A municipality may be held liable under § 1983 only if the municipality itself caused the constitutional deprivation. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality is not liable under § 1983 for an injury inflicted solely by its employees or agents because the doctrine of respondeat superior is inapplicable under § 1983. *Id.* at 691–95, 98 S.Ct. 2018. "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987) (O'Connor, J., dissenting)). The local government's policy or custom "must be 'the moving force of the

constitutional violation' in order to establish the liability of a government body under § 1983." *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018).

The Supreme Court reviewed the history of municipality liability in *Board of County Comm. Bryan County, Okla. v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

> We held in *Monell v. New York City Dept. of Social Servs.*, 436 U.S. at 689, 98 S.Ct., at 2035, that municipalities and other local governmental bodies are "persons" within the meaning of § 1983. We also recognized that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor. Our conclusion rested partly on the language of § 1983 itself. In light of the statute's imposition of liability on one who "subjects [a person], or causes [that person] to be subjected," to a deprivation of federal rights, we concluded that it "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." . . . We have consistently refused to hold municipalities liable under a theory of respondeat superior. . . . Instead, in *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" **that caused the plaintiff's injury.**

to engage in these 'victimless prosecutions' they require exceptional police work."); Peter Dworkin, "Confronting Your Abuser in Oregon: A New Domestic Violence Hearsay Exception," 37 *Willamette L.Rev.* 299, 299 (2001) (finding that the "rising number of 'victimless' prosecutions" illustrates that "[t]he successful prosecution of domestic as-

sault has increasingly become a priority in many jurisdictions across the country"). *See generally* George Wattendorf, "Focus on Domestic Violence Prosecuting Cases Without Victim Cooperation" (1996) (discussing techniques for prosecuting domestic abuse cases after request of victim to drop charges and victim's refusal to testify against abuser).

*Id.,* 117 S.Ct. at 1387–88 (citations omitted) (emphasis added).

In *Brown,* an arrestee brought a § 1983 action against the county, the sheriff, and a deputy, in which she sought to recover for injuries sustained when she was forcibly removed from her automobile. The Court of Appeals for the Fifth Circuit, 67 F.3d 1174, found that the county was subject to municipal liability based on the sheriff's decision to hire the deputy after an inadequate background check. In reversing the decision of the Court of Appeals, the Supreme Court noted that:

> As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Id.,* 117 S.Ct. at 1388. The Court then found that there was not a "direct causal link" between the sheriff's failure to conduct an adequate background check of the deputy and the deputy's alleged use of excessive force. "Sheriff Moore's hiring decision was itself legal, and Sheriff Moore did not authorize Burns to use excessive force." *Id.,* 117 S.Ct. at 1389.

 A plaintiff may bring an action for inadequate police supervision under § 1983. *Hays v. Jefferson County, Ky.,* 668 F.2d 869 (6th Cir.1982). Mere negligence is insufficient; the failure must be so gross that future police misconduct is substantially certain to result. *Id.* Even when gross negligence is demonstrated, "a strong causal link must be established between the inadequacies in the training or

supervision and the specific wrongdoing which injured the plaintiff." *Tompkins,* 655 F.Supp. at 470. More specifically, a plaintiff must show "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate are present." *See Bonenberger v. Plymouth Twp.,* 132 F.3d 20, 25 (3rd Cir.1997). (internal quotations and citations omitted).

 Here, there is no allegation that Raymond Simmons, Humboldt Chief of Police and the policymaker for the Police Department, had contemporaneous knowledge of Plaintiff's arrest. Plaintiff contends that Chief Simmons had knowledge of a "prior pattern of similar incidents." However, the only incident pointed to by Plaintiff is the arrest of Billy Thomas in a case of mistaken identity. According to Thomas, the officers "jerked open" his door, pulled him out of his house, pointed guns at his head, "slammed" him against his trailer, and handcuffed him. Thomas Depo. at pp. 27–28. When Thomas proved his identity to the officers, they left. *Id.* at p. 29. The City paid Thomas $4000 to settle his claim. *Id.*

This one incident does not form a pattern. Furthermore, the Thomas incident cannot be considered similar to the one that is the subject of this lawsuit. The present case does not involve mistaken identity but, instead, an arrest based on a facially valid warrant.

Plaintiff argues that the failure of Chief Simmons to discipline the officers for this incident indicates "circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." Because the officers arrested Plaintiff pursuant to a facially valid warrant, there was

no reason for Chief Simmons to discipline the officers.

■■■■ Failure to properly train city employees can create liability under § 1983. *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir.1982). In *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Court enunciated the standard for a failure to train claim as follows:

We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. [Footnote omitted] This rule is most consistent with our admonition in *Monell*, 436 U.S., at 694, 98 S.Ct., at 2037, and *Polk County v. Dodson*, 454 U.S. 312, 326[, 102 S.Ct. 445, 70 L.Ed.2d 509] (1981), that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. As Justice Brennan's opinion in *Pembaur v. Cincinnati*, 475 U.S. 469, 483–484, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality) put it: "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. *See also Oklahoma City v. Tuttle*, 471 U.S., at 823[, 105 S.Ct. 2427] (opinion of Rehnquist, J.). Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases— can a city be liable for such a failure under § 1983.

*City of Canton*, 489 U.S. at 388–89, 109 S.Ct. 1197. Therefore, under a failure to train theory, a plaintiff must show "that the training program is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or actually caused the plaintiff's injury." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994).

■■■■ As noted in *Patterson v. City of Cleveland*, 1999 WL 68576 (6th Cir.), " '[d]eliberate indifference' is a stringent standard, requiring proof that the government entity disregarded a known or obvious risk." Inadequate training constitutes a municipal policy only if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390, 109 S.Ct. 1197.

For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, *see Tennessee v. Garner*, 471 U.S. 1[, 105 S.Ct. 1694, 85 L.Ed.2d 1] (1985), can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

489 U.S. at 390 n. 10, 109 S.Ct. 1197.

■■■■ A need for training or other corrective action to avoid deprivations of a constitutional right must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures. *See Jones v. City of Chicago*, 787 F.2d 200, 205 (7th Cir.1986);

*Fulkerson v. City of Lancaster,* 801 F.Supp. 1476, 1483 (E.D.Pa.1992), *aff'd,* 993 F.2d 876 (3rd Cir.1993). It is not sufficient merely to show that a particular officer acted improperly or that better training would have enabled an officer to avoid the particular conduct causing injury. *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1059–70 (3rd Cir.1991), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992). Any failure to train or supervise adequately must also cause the violation about which the plaintiff complains. *Id.* at 1065.

 In support of its motion, Defendant City has attached various documents showing that it requires its officers to receive training at the Tennessee Law Enforcement Training Academy, be certified by the Police Officer Standards and Training Commission, and receive forty hours of annual in-service training and that Defendant Officers received this training and certification. Buchanan Depo. at pp. 4–5; Reid Depo. at pp. 4–5; Defendants' Exhibit 12.

Plaintiff has pointed to nothing in the record to rebut the evidence presented by Defendant City that Defendant Officers were adequately trained. Plaintiff has presented no countervailing evidence that any training policies of the City were formulated with "deliberate indifference" as to their consequences or that the training policies authorized the deprivation of Plaintiff's federal rights." *Brown,* 117 S.Ct. at 1389. Therefore, Defendant City is entitled to summary judgment on Plaintiff's failure to train claim.

 Finally, Plaintiff asserts that Defendant City had a pattern or practice of ignoring complaints of police misconduct. However, as discussed above, the only other incident pointed to by Plaintiff is the one involving Billy Thomas. Moreover, Defendants have presented the affidavit of Chief Simmons which states that the Police Department has a policy of investigating complaints against its officers, and Thomas' complaint concerning the arrest of Plaintiff was investigated pursuant to this policy. Simmons Affidavit at para. 13–16. Chief Simmons has disciplined officers when a complaint was substantiated. *Id.*

Plaintiff has presented no countervailing evidence that any policy or custom of Defendant City "violated federal law, or directed or authorized the deprivation of [Plaintiff's] federal rights." *Id.* Neither is there any evidence that a policy was formulated "with 'deliberate indifference' as to its known or obvious consequences." *Id.* Because Plaintiff has failed to establish a causal connection between his alleged injuries and any policy or custom of the City, summary judgment is granted as to the City.

*Summary and Conclusion*

In summary, Defendants' motion for summary judgment is PARTIALLY GRANTED and PARTIALLY DENIED. The state law claims against Defendants Reid, McCoy, and Buchanan are DISMISSED. The portion of the motion seeking summary judgment on the § 1983 claims against Defendant McCoy is GRANTED, and he is DISMISSED as a defendant. The portion of the motion seeking summary judgment on the § 1983 claim of an unconstitutional search and seizure against Defendants Reid and Buchanan is GRANTED. The portion of the motion seeking summary judgment on the § 1983 claim of excessive force against Defendants Reid and Buchanan is DENIED. The portion of the motion seeking summary judgment on the § 1983 claims against the City is GRANTED, and the City is DISMISSED as a defendant.

Accordingly, the only claim remaining in this action is the § 1983 Fourth Amend-

ment excessive force claim against Defendants Reid and Buchanan.

IT IS SO ORDERED.